UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **WILBERT STEWART** | **CASE NO. 6:17-CV-01260** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **MONCLA MARINE OPERATIONS. LLC, ET AL.** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

**MEMORANDUM RULING**

The present matter before the Court is the Motion for Partial Summary Judgment to Dismiss Jones Act Negligence and Unseaworthiness Claims [ECF No. 151] filed by defendants, Atlantic Specialty Insurance Company, Markel Insurance Company, State National Insurance Company, Navigators Insurance Company, United States Fire Insurance Company, Mitsui Sumitomo Insurance Company of America, Lloyd's Underwriters (Lloyd's Syndicate 1206 ATL, Lloyd's Syndicate 1897 SKD, Lloyd's Syndicate 1183 TAL, Lloyd's Syndicate 2007 NVA, Lloyd's Syndicate 0382 HDU, Lloyd's Syndicate 1274 AUL, and Lloyd's Syndicate 0510 KLN), and Swiss Re International SE (collectively, the "Underwriter Defendants"). For the reasons stated below, the Underwriter Defendants' Motion for Partial Summary Judgment is DENIED.

**I.**
**BACKGROUND**

Wilbert Stewart was employed as a derrickman for Moncla Marine, LLC and Moncla Marine Operations, LLC (collectively, "Moncla") and, at the time of his accident, was assigned to the drilling barge RIG 103.[1] RIG 103 was "spudded down" at a wellsite on the inland waters of St. Bernard Parish, Louisiana.[2] On October 13, 2016, a frac barge was moored alongside the

---
[1] ECF No. 110 at ¶ 8.
[2] ECF No. 151-3 at 189.

starboard side of RIG 103.[3] Eugene Hackworth, a toolpusher for Moncla, requested that Stewart retrieve fluid from the frac barge.[4] In order to perform this task, Stewart had to cross from the deck of RIG 103 to the deck of the frac barge. The horizontal distance between RIG 103 and the frac barge was approximately six (6) to eight (8) inches, and the vertical distance between the two decks was approximately eleven (11) to over nineteen (19) inches.[5] Stewart's safety expert opines that the vertical distance between the two decks was as much as fourteen (14) inches, and that the "height difference between the rig and the frac barge was about two (2) to three (3) feet."[6] A gangway had not been deployed at the time Stewart crossed over from RIG 103 to the frac barge.[7] Accordingly, Stewart proceeded to jump from the deck of RIG 103 to the deck of the frac barge.[8] He slipped, "falling onto his right side on the deck of the frac barge and sustaining serious personal injuries."[9]

Stewart filed this action against Moncla on October 3, 2017.[10] Thereafter, he joined the Underwriter Defendants as party-defendants in his First Amended Complaint.[11] Moncla filed for relief under Chapter 11 of the Bankruptcy Code, and the case is proceeding solely against the Underwriter Defendants. Stewart asserts claims under the Jones Act, 46 U.S.C. § 30104, and general maritime claims for maintenance and cure and unseaworthiness.[12] The Underwriter Defendants filed the instant Motion for Partial Summary Judgment addressing Stewart's Jones Act and unseaworthiness claims.

---

[3] *Id*. at 192-193.
[4] *Id*. at 205; *see also* ECF No. 151-4.
[5] ECF No. 151-3 at 212, 221; ECF No. 151-8 at 54. The parties dispute the size of the gap between the decks of RIG 103 and the frac barge.
[6] ECF No. 156-10 at 7.
[7] ECF No. 156-1 at 210.
[8] *Id*. at 212.
[9] ECF No. 110 at ¶ 8.
[10] ECF No. 1.
[11] ECF No. 110.
[12] ECF NO. 110 at ¶ 9.

## II.
### SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[13] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[15] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[16]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[17] "Credibility determinations are not part of the summary judgment analysis."[18] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the

---

[13] Fed. R. Civ. P. 56(a).
[14] *Id.*
[15] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[16] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (internal citations omitted).
[17] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[18] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

existence of an element essential to that party's case, and on which that party will bear the burden of proof."[19]

### III.
### DISCUSSION

**A. Plaintiff's Jones Act Claim.**

The Underwriter Defendants first argue that Stewart cannot prove all of the essential elements of his Jones Act claim. The Jones Act allows an injured seaman to bring an action against his employer for negligence. "A seaman is entitled to recovery under the Jones Act . . . if his employer's negligence is the cause, in whole or in part, of his injury."[20] A negligence claim under the Jones Act may arise in many ways "including the failure to use reasonable care to provide a seaman with a reasonably safe place to work, the existence of a dangerous condition on or about the vessel, failure to inspect the vessel for hazards, failure to take precautions to protect a seaman, or any other breach of the duty of care."[21] A Jones Act employer's duty of care "retains the usual and familiar definition of ordinary prudence."[22] With respect to causation, "a defendant must bear responsibility for his negligence if his negligence played any part, even the slightest, in producing the injury" for which damages are sought.[23]

The Underwriter Defendants contend that they are entitled to summary judgment because Stewart's injuries were caused solely by his own negligent conduct. According to the Underwriter Defendants, "Stewart's decisions to cross the frac barge (1) at that particular location, (2) without

---

[19] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[20] *Gautreaux v. Scurlock Marine, Inc.* (*Gautreaux II*), 107 F.3d 331, 335 (5th Cir. 1997) (en banc).
[21] *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 329 (5th Cir. 1977), *overruled on other grounds by Gautreaux II*, 107 F.3d at 339; Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW, § 6–21 (4th ed. 2004).
[22] *Id.*
[23] *Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299, 302 (5th Cir. 1984) (citing *Chisholm v. Sabine Towing and Transportation Co.*, 679 F.2d 60, 62 (5th Cir. 1982)); *In re Cooper/T. Smith*, 929 F.2d 1073, 1076–77 (5th Cir. 1991).

a gangway, and (3) by jumping, were his and his alone"[24] The Underwriter Defendants point to deposition testimony that the horizontal gap between the decks of the frac barge and RIG 103 was no more than eleven (11) inches which, according to the Underwriter Defendants, would not have required a gangway to safely cross from one vessel to another.[25] According to the Underwriter Defendants, even if the distance between the decks was greater, it is "up to the individual employee to use his judgment in determining whether he can negotiate a step without a gangway."[26] Specifically, Moncla employees had "the responsibility . . . to deploy a gangway when one is needed," and Stewart "had the authority and ability to deploy the gangway if he needed it."[27] The Underwriter Defendants point out that Stewart had "stop work" authority to deploy the gangway if needed.[28] The Underwriter Defendants further point to evidence that the gap between the decks of the frac barge and RIG 103 was more narrow at other locations but Stewart chose to cross at the point where the gap between the decks was larger.[29] Finally, the Underwriter Defendants assert that Stewart had over twenty-seven (27) years of experience in the "marine industry" and should have been able to judge whether he could cross over to the frac barge safely at the point he chose.[30]

A seaman must act with ordinary prudence under the circumstances.[31] Under the Jones Act, comparative fault may reduce a seaman's recovery, but it will not necessarily bar his recovery.[32] The *Two-J Ranch* case illustrates the role of comparative fault at the summary judgment stage in a Jones Act case.[33] In that case, the plaintiff was an assistant deckhand aboard a tow boat. The

---

[24] ECF No. 151-1 at 9-10.
[25] *Id*. at 4.
[26] *Id*.
[27] *Id*.
[28] *Id*.
[29] *Id*. at 9 ("Stewart also admitted that the RIG 103 and the frac barge were level at other crossing points and that nothing prevented him from crossing at a different location as opposed to the spot at which he chose to cross.")
[30] *Id*. at 1.
[31] *Gautreaux II,* 107 F.3d at 339; *Jauch v. Nautical Serv., Inc.,* 470 F.3d 207, 213 (5th Cir. 2006) (citing *Miles v. Melrose,* 882 F.2d 976, 984 (5th Cir. 1989)).
[32] *Id*.
[33] *In re Two-J Ranch, Inc*., 534 F.Supp.2d 671 (W.D. La. 2008).

plaintiff attempted to board a barge-in-tow by walking along the starboard lip of the barge.[34] The lip of the barge was only twelve (12) inches wide.[35] The court noted that "there was no boundary, rail, or wall on the riverside to prevent a fall."[36] The plaintiff lost his footing and "slipped into the water and could not be rescued."[37] The court denied summary judgment based on the plaintiff's own negligent conduct in attempting to cross over to the barge on that narrow starboard lip.[38] The court noted that "the facts of this case almost overwhelmingly place the fault on the deceased."[39] However, the court found "the fact that contributory negligence does not bar recovery requires that we deny summary judgment."[40] The court noted genuine issues of material fact with respect to the defendants' negligence, including whether the plaintiff was properly provided with adequate safety training.[41] The court concluded that "there are genuine issues of material fact as to the comparative fault to be attributed to various entities," and denied summary judgment.[42]

In the present case, like *Two-J Ranch*, a reasonable trier of fact could conclude that Stewart was negligent in how he crossed from RIG 103 over to the frac barge, and that his negligence contributed to his injuries. Stewart however points to disputed factual issues as to the comparative fault of Moncla and argues these disputed facts preclude summary judgment in the present case. Specifically, Stewart points to evidence in the record that the horizontal gap between the deck of RIG 103 and the deck of the frac barge was over nineteen (19) inches.[43] The record includes the expert report of Stewart's safety expert, Robert Borison, in which Mr. Borison opines that a

---

[34] *Id.* at 674.
[35] *Id.*
[36] *Id.* at 675.
[37] *Id.*
[38] *Id.* at 685.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] ECF No. 156 at 19.

horizontal gap of larger than nineteen (19) inches would require a gangway for the safe egress from a vessel.[44] Stewart also disputes that he had the responsibility to install a gangway. He contends that he "never deployed a gangway," and "had never been instructed on how to deploy a gangway . . . ."[45] Rather, Stewart contends that "the responsibility for providing safe ingress and egress falls to the employer, and the supervisor—either the toolpusher or the driller . . . ."[46] Finally, while Stewart concedes that he has worked in the oil field for "close to twenty-seven (27) years," he contends that he never "worked on an inland barge until his employment with Moncla and had only worked as an inland barge derrick hand for a few months when he was injured."[47] He contends that he had little experience moving from one vessel to another given his short tenure. Considering the summary judgment record as a whole, a reasonable trier of fact could find fault on the part of Moncla and its employees even if the evidence also supports a finding of comparative fault on the part of Stewart. Accordingly, as in *Two-J Ranch*, summary judgement is inappropriate given the presence of genuine disputes of material fact pertaining to the comparative fault of Moncla. The Underwriter Defendants' Motion for Partial Summary Judgment is therefore DENIED with respect to Stewart's Jones Act claim.

### B. Plaintiff's Unseaworthiness Claim.

The Underwriter Defendants next challenge Stewart's unseaworthiness claim. A vessel owner has an absolute, non-delegable duty to provide a seaworthy vessel.[48] A ship is seaworthy if the vessel, including its equipment and crew, "is reasonably fit and safe for the purposes for which

---

[44] *Id*. at 19-20.
[45] *Id*. at 10.
[46] *Id*. at 11.
[47] *Id*. at 7.
[48] *See Mitchell v. Trawler Racer, Inc*., 362 U.S. 539, 548–49 (1960).

it was intended to be used."[49] Unseaworthiness does not require proof of fault; a plaintiff must show that the unseaworthy condition "played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."[50] "[A]n isolated personal negligent act of the crew" is not sufficient to support a finding that a vessel is unseaworthy.[51] Rather, there should be evidence of "a congeries of acts."[52]

Plaintiff's unseaworthiness claim is based on his allegation that Moncla failed to provide a safe egress from RIG 103 to the frac barge. Under general maritime law, a defendant owes a duty of ordinary care under the circumstances, including the duty to provide a safe means of ingress to and egress from the vessel. Ordinarily, the duty to provide safe ingress and egress is a negligence concept.[53] In other words, the plaintiff's claim is grounded on allegations that "the vessel owner's employees are negligent in carrying out the ingress and egress using the mode provided."[54] "Only if a vessel fails to provide a safe, appropriate means of ingress and egress is ingress and egress an unseaworthiness concept."[55]

Here, Stewart points to evidence that RIG 103 did not have a safe means of egress to the deck of the frac barge. The Underwriter Defendants point to evidence that RIG 103 was equipped with gangways that could have been deployed to allow Stewart to safely cross over to the frac barge.[56] It is undisputed that the gangways had not been deployed. While the Underwriter

---

[49] *Boudreaux v. United States of America*, 280 F.3d 461, 468 (5th Cir. 2002)(citation omitted*); Boudoin v. Lykes Bros. S.S. Co*., 348 U.S. 336, 339 (1955) ("The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm but a vessel reasonably suited for her intended service.").
[50] *Phillips v. Western Co. of North America*, 953 F.2d 923, 928 (5th Cir.1992).
[51] *Daughdrill v. Ocean Drilling & Exploration Co*., 709 F.Supp. 710, 712 (E.D.La.1989).
[52] *Id*. (quoting *Robinson v. Showa Kaiun K.K*., 451 F.2d 688, 690 (5th Cir. 1971)).
[53] *Howard v. Offshore Liftboats, LLC*, No. CV 13-4811, 2016 WL 3536799, at *3 (E.D. La. June 28, 2016) (citing *Cormier v. Rowan Drilling*, 549 F.2d 963, 971 (5th Cir. 1977); *Arceneaux v. Ingram Barge Co.,* No. 94-2505, 1995 WL 527635 (E.D. La. Sept. 5, 1995)).
[54] *Id*. at *3.
[55] *Id.*
[56] ECF No. 151-1 at 4.

Defendants argue that Stewart had authority to deploy a gangway to assist his movement to the frac barge, Stewart contends that he was not trained to deploy the gangway.[57] He also points to testimony that OSHA regulations require a gangway for horizontal gaps of more than nineteen (19) inches.[58] The summary judgment record includes evidence that the horizontal gap at the point where Stewart exited RIG 103 exceeded nineteen (19) inches.[59] Accordingly, as with Stewart's Jones Act claim, there are genuine disputes of material fact as to the essential elements of Stewart's seaworthiness claim. Therefore, the Court denies the Motion for Partial Summary Judgment as to this claim.

## IV.
### CONCLUSION

For the foregoing reasons, the Motion for Partial Summary Judgment filed by the Underwriter Defendants [ECF No. 151] is DENIED.

THUS DONE in Chambers on this 6th day of February, 2023.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[57] ECF No. 156 at 10.
[58] *Id*. at 19-20.
[59] *Id* at 19.