UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **WILBERT STEWART** | **CASE NO.  6:17-CV-01260** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **MONCLA MARINE OPERATIONS, LLC, ET AL.** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

The present matters before the Court are: (1) a Motion for Partial Summary Judgment on Coverage filed by plaintiff Wilbert Stewart [ECF No. 148]; (2) a Motion for Partial Summary Judgment on Punitive Damages filed by the Underwriter Defendants [ECF No. 150];[1] and (3) a Motion for Partial Summary Judgment for Credit Against Judgment filed by the Underwriter Defendants [ECF No. 152]. After considering the parties' arguments, the relevant authorities, and the summary judgment record, the Court rules as follows.

## I.
### BACKGROUND

### A.   Stewart's Accident

Wilbert Stewart was employed as a derrickman for Moncla Marine, LLC and Moncla Marine Operations, LLC (collectively, "Moncla") and, at the time of his accident, was assigned to the drilling barge RIG 103.[2] RIG 103 was "spudded down" at a wellsite on the inland waters of St. Bernard Parish, Louisiana.[3] On October 13, 2016, a frac barge was moored alongside the

---

[1] The "Underwriter Defendants" are Atlantic Specialty Insurance Company, Markel Insurance Company, State National Insurance Company, Navigators Insurance Company, United States Fire Insurance Company, Mitsui Sumitomo Insurance Company of America, Lloyd's Underwriters (Lloyd's Syndicate 1206 ATL, Lloyd's Syndicate 1897 SKD, Lloyd's Syndicate 1183 TAL, Lloyd's Syndicate 2007 NVA, Lloyd's Syndicate 0382 HDU, Lloyd's Syndicate 1274 AUL, and Lloyd's Syndicate 0510 KLN), and Swiss Re International SE.
[2] ECF No. 110 at ¶ 8.
[3] ECF No. 151-3 at 189.

starboard side of RIG 103.[4] Eugene Hackworth, a toolpusher for Moncla, requested that Stewart retrieve fluid from the frac barge.[5] In order to perform this task, Stewart had to cross from the deck of RIG 103 to the deck of the frac barge. The horizontal distance between RIG 103 and the frac barge was approximately six (6) to eight (8) inches, and the vertical distance between the two decks was approximately eleven (11) to over nineteen (19) inches.[6] Stewart's safety expert opines that the vertical distance between the two decks was as much as fourteen (14) inches, and that the "height difference between the rig and the frac barge was about two (2) to three (3) feet."[7] A gangway had not been deployed at the time Stewart crossed over from RIG 103 to the frac barge.[8] Accordingly, Stewart proceeded to jump from the deck of RIG 103 to the deck of the frac barge.[9] He slipped, "falling onto his right side on the deck of the frac barge and sustaining serious personal injuries."[10]

Stewart filed this action against Moncla on October 3, 2017.[11] He later joined the Underwriter Defendants as party-defendants in his First Amended Complaint.[12] Moncla subsequently filed for relief under Chapter 11 of the Bankruptcy Code, and the automatic stay was modified to allow Stewart to proceed solely against the Underwriter Defendants. Stewart asserts a claim under the Jones Act, 46 U.S.C. § 30104, and general maritime claims for maintenance and

---

[4] *Id*. at 192-193.
[5] *Id*. at 205; *see also* ECF No. 151-4.
[6] ECF No. 151-3 at 212, 221; ECF No. 151-8 at 54. The parties dispute the size of the gap between the decks of RIG 103 and the frac barge.
[7] ECF No. 156-10 at 7.
[8] ECF No. 156-1 at 210.
[9] *Id*. at 212.
[10] ECF No. 110 at ¶ 8.
[11] ECF No. 1.
[12] ECF No. 110.

cure and unseaworthiness.[13] The present motions for partial summary judgment primarily address coverage under a primary insurance policy issued by the Underwriter Defendants.[14]

**B.    Moncla's Insurance Policies**

GCM insurance policy 16549 (the "Policy") provides "hull and machinery" ("H&M") and "protection and indemnity" ("P&I"), and provides indemnity coverage up to $1,000,000.[15] The Policy was issued to twenty (20) related companies, including Moncla Marine, LLC and Moncla Marine Operations, LLC. The Policy's "limit of liability clause" provides:

> **LIMIT OF LIABILITY CLAUSE**
>
> It is understood and agreed that the Assurer's limit of liability under this section shall not exceed $1,000,000.00 each accident or occurrence, regardless of the number of vessels involved. Any applicable deductible amount is to be included within the aggregate limit amount.

The Policy also includes two deductible clauses—a "general" deductible and an "aggregate deductible."[16] The general deductible clause of the Policy provides:

> **DEDUCTIBLE CLAUSE**
>
> A deductible average of $100,000.00 shall apply to claims covered under Paragraphs numbered 1, 2 and 3 of the Protection and Indemnity Form SP-23 (1/56) and a deductible average of $100,000.00 shall apply to claims covered under the remaining paragraphs and clauses of the Protection and Indemnity Form SP-23 (1/56).
>
> The total sum deductible from the total of all claims, costs, expenses or fees, covered under this section, resulting from one accident or occurrence, shall not exceed $100,000.00 under this section.[17]

The "aggregate deductible" clause in the Policy states:

> **AGGREGATE DEDUCTIBLE CLAUSE (P/I)**

---

[13] *Id.* at ¶ 9.
[14] ECF No. 152-2.
[15] ECF No. 152-4 at 1. (citing ECF No. 152-2).
[16] ECF No. 152-2 at 43.
[17] *Id.*

3

> After application of the basic deductible, all covered losses, costs and expenses shall be further subject to a $675,000.00 Annual Aggregate Deductible. The difference between the basic deductible or deductibles per occurrence and the gross covered loss shall be applied against the aggregate deductible. The aggregate deductible shall apply to all covered losses and must be ultimately absorbed by the Assured, net of any recoveries.
> In the event the number of vessels or number of *crew insured* under this section is increased, the annual aggregate deductible shall, at the sole discretion of the underwriter(s), be proportionately adjusted for the additional vessel(s) and number of crew at pro rata time at risk.
>
> Notwithstanding the Cancellation Clause contained elsewhere in the policy, the Annual Aggregate Deductible is earned as losses occur and as such shall not be pro-rated over the term of this policy unless this policy is cancelled by this company, in which case the Annual Aggregate Deductible is pro-rated, provided always that it has not been exhausted or reduced by prior covered claims.
>
> After exhaustion of the aggregate deductible, losses are payable hereunder subject to the basic deductible provision as described elsewhere.[18]

The parties have stipulated that the general deductible applicable to Stewart's claim has been exhausted.[19] The parties have also stipulated that the annual "aggregate deductible" has not been fully exhausted and "still has a balance of $420,336.88."[20] The Underwriter Defendants also issued an excess insurance policy (GCM Policy 20396), that provides coverage up to a limit of $5,000,000.[21] This Excess Policy incorporates the terms and conditions of the Policy (GCM Policy 16549). The parties dispute the effect of these terms and conditions on Stewart's direct action claim against the Underwriter Defendants.

## II.
### SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[22] "The court shall grant

---

[18] *Id.*
[19] ECF No. 152-4 at ¶ 5.
[20] Id. at ¶ 6 (citing ECF No. 138 at 19).
[21] ECF No. 152-3 at 2 (hereinafter, the "Excess Policy").
[22] Fed. R. Civ. P. 56(a).

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[24] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[25]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[26] "Credibility determinations are not part of the summary judgment analysis."[27] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[28]

### III.
### DISCUSSION

**A.  Are the Underwriter Defendants Entitled to a "Credit" for the Remaining Aggregate Deductible?**

---

[23] *Id.*
[24] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[25] *Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir. 1994) (internal citations omitted).
[26] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[27] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[28] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

The Underwriter Defendants argue that the remaining aggregate deductible under the Policy should be "credited" against any damage award under the Louisiana Direct Action Statute. The Louisiana Direct Action Statute allows a victim of tortious conduct to proceed directly against an insured tortfeasor's insurance carrier under certain circumstances:

> A. No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his survivors, mentioned in Civil Code Art. 2315.1, or heirs against the insurer.
>
> B. (1) The injured person or his survivors or heirs mentioned in Subsection A of this Section, at their option, shall have a right of Direct Action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido . . .; however, such action may be brought against the insurer alone only when at least one of the following applies:
>
> (a) The insured has been adjudged bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured bankrupt have been commenced before a court of competent jurisdiction. . . .[29]

The Direct Action Statute thus creates "a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured" but where, as here, the insured has filed for relief under the Bankruptcy Code.[30] These provisions of the statute are "constructively incorporated into every insurance policy having effect in Louisiana."[31] While the Underwriter Defendants characterize the Policy as an "indemnity" policy as opposed to a "liability" policy, the

---

[29] La. R.S. 22:1269.
[30] *Gorman v. City of Opelousas*, 148 So. 3d 888, 896 ((La. 7/1/14) (quoting *Hood v. Cotter*, 5 So. 3d 819, 829) (La. 12/2/08)).
[31] *Albany Ins. Co. v. Bengal Marine, Inc.*, 857 F.2d 250, 255 (5th Cir. 1988) (citing *Humble Oil & Refining Co. v. M/V John E. Coon*, 207 F. Supp. 45 (E.D. La. 1962)).

statute applies regardless of whether an insurance policy is characterized as an "indemnity" policy or includes a so-called "no action" clause.[32]

Stewart argues that the Policy provides "first dollar" coverage and that the full amount of his claim must be paid by the Underwriter Defendants without a deduction (or "credit") for the remaining aggregate deductible. According to Stewart, the Underwriter Defendants' sole recourse for recovering the aggregate deductible is a claim against their bankrupt insured. While the Direct Action Statute broadly provides a cause of action directly against a tortfeasor's insurance carrier, that cause of action is limited by "the terms and limits of the policy . . . ."[33] Accordingly, while this statute "has been liberally construed to favor injured persons who wish to maintain an action directly against an insurer," provisions in a policy "which limit liability must be given effect."[34]

In the present case, the Policy's standard aggregate deductible provision limits the Underwriter Defendants' liability by the amount of the remaining deductible.[35] The Policy further provides that any unpaid standard deductible or annual aggregate deductible "may first be deducted from any and all returns and any and all claims payments for loss or damages that are recoverable under this policy."[36] This language supports the Underwriter Defendants' position that they are

---

[32] *Quinlan v. Liberty Bank & Tr. Co.*, 575 So. 2d 336, 349 (La. 1990), on reh'g (Mar. 11, 1991); *see also Grubbs v. Gulf Intern. Marine, Inc.*, 625 So.2d 495 (La. 1993); *Sanders v. Nexion Health at Minden, Inc.*, No. 5:18-CV-0263, 2018 WL 4265256, at *4 (W.D. La. Sept. 6, 2018). In *Quinlan*, the Louisiana Supreme Court explained the distinction between the types of policies:
> The general distinction between the two kinds of insurance is that if the policy is one against liability, the coverage thereunder attaches when the liability attaches, regardless of actual loss at that time; but if the policy is one of indemnity only, an action against the insurer does not lie until an actual loss in the discharge of the liability is sustained by the insured.

575 So. 2d at 349. "No action" clauses typically provide that "no action shall be against the company as respects any loss under this policy unless it shall be brought by the insured, himself, to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue." *Id.* "No action" clauses are invalid under the Direct Action Statute. *Id.*

[33] La. R.S. § 1269(A).

[34] *Albany Ins. Co. v. Bengal Marine, Inc.*, No. 85-5903, 1987 WL 10201 at *7 (E.D. La. April 24, 1987).

[35] ECF No. 148-4 at 43.

[36] *Id.* at 16.

7

entitled to a credit equal to the remaining deductible. The Underwriter Defendants' argument finds further support in a clause of the Policy that states: "If claim is made under this Policy by anyone other than the Owner of the Vessel, such person shall not be entitled to recover to a greater extent than would the Owner, had claim been made by the Owner as an Assured named in this Policy."[37] In other words, the remaining deductible that reduces the coverage available to Moncla similarly reduces Stewart's claim. Accordingly, Stewart's position on the Policy's aggregate deductible clause is inconsistent with the text of the Direct Action Statute and the terms of the Policy.

While there is little case law addressing deductibles under the Louisiana Direct Action Statute, the Underwriter Defendants point to *Albany Ins. Co. v. Bengal Marine, Inc.*[38] In *Albany*, a third-party tort plaintiff sued a barge charterer and its insurance carrier for property damage arising out of the sinking of a barge containing drilling mud.[39] The plaintiff in *Albany* brought its claims under the Direct Action Statute.[40] Like the Policy, the insurance policy in *Albany* contained an annual aggregate deduction clause.[41] The district court in *Albany* held that the Louisiana Direct Action Statute "does not change the provisions of an insurance policy to impose liability not provided for in the policy."[42] The court concluded that the aggregate deductible clause in that case limited the insurance carrier's liability to the direct action plaintiff. Accordingly, the court reduced

---

[37] *Id.* at 39.
[38] *Albany Ins. Co. v. Bengal Marine, Inc*., 857 F.2d 250 (5th Cir. 1988).
[39] *Id*. at 251.
[40] *Id*.
[41] *Id*. at 254.
[42] Id at *7 (the Direct Action Statute "imposes liability on the insurer subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer in a direct action by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.") (quoting *Crown Zellerbach Corp. v. Ingram Industries, Inc.*, 783 F.2d 1296, 1299 (5th Cir. 1986)).

the award to the plaintiff by the remaining aggregate deductible and, on appeal, the Fifth Circuit affirmed.[43]

In contrast, Stewart cites no Louisiana or Fifth Circuit case law supporting his argument that the Underwriter Defendants must pay the full amount of his claim regardless of the remaining aggregate deductible. Rather, Stewart points to a law review article discussing the effect of a bankruptcy filing and the bankruptcy discharge on insurance coverage and deductibles (the "Anderson Article").[44] Specifically, Stewart cites to a discussion in the Anderson Article where the author states, without citing any authority, that a tort victim is entitled to receive the full value of his or her claim up to the policy limit without a reduction for the remaining deductible.[45] However, this analysis is not based on the Louisiana Direct Action Statute, Louisiana law on insurance contracts, or the specific policy language at issue in the present case. Indeed, as the Underwriter Defendants point out, the article appears to distinguish between liability policies and indemnity policies, a distinction that is irrelevant under the Louisiana Direct Action Statute.

Stewart also points to a clause in the coverage limitation paragraph of the policy: "any applicable deductible amount is to be included within the aggregate limit amount."[46] Stewart appears to suggest that this language obligates the Underwriter Defendants to "first dollar" coverage without regard to a credit for any remaining deductible. Nothing in the text of this clause requires the Underwriter Defendants to pay the full amount of a claim without regard to the

---

[43] The district court did limit the amount of the deductible "credited" to the plaintiff's direct action claim to account for additional, unfiled claims that would have otherwise reduced the remaining aggregate deductible. *Id*. at *8. The Fifth Circuit likewise affirmed the district court's pro rata reduction of the deductible.
[44] Margaret M. Anderson, *Post Bankruptcy Treatment of Insured Claims*, 17 J. BANKR. L.& PRAC. 6 Art. 3 (Sept. 2008).
[45] ECF No. 148-2 at 7.
[46] ECF No. 148-4 at 43.

Policy's deductible provision. To the contrary, the plain meaning of this clause is that the $1,000,000 coverage limit must be reduced by any remaining deductible.[47] Moreover, Stewart's reading of this provision conflicts with the language in the Policy that provides for a credit equal to the remaining deductible against a claim.[48]

Considering the terms of the Policy, the language of the Louisiana Direct Action Statute, and the *Albany* decision, the Court agrees with the Underwriter Defendants that any recovery by Stewart under the Louisiana Direct Action Statute should be reduced by the amount of the remaining annual aggregate deductible—$420,336.88.[49] There is no evidence in the summary judgment record of additional claims that would reduce the aggregate deductible applicable to Stewart's claim; accordingly, the Court will not prorate the deductible as the district court did in the *Albany* case. In sum, the Court GRANTS the Underwriter Defendants' Motion for Partial Summary Judgment. The Court DENIES Stewart's Partial Motion for Summary Judgment on insurance coverage to the extent it seeks a ruling that the Underwriter Defendants must pay the full amount of the Stewart's claim without any reduction for the remaining aggregate deductible.

B.   **The Underwriter Defendants' Motion for Summary Judgement on Punitive Damages.**

The Underwriter Defendants next move for summary judgment on the grounds that, as a matter of law, Stewart is not entitled to recover punitive damages from the Underwriter Defendants. A Jones Act employer may be liable for punitive damages for the "willful and wanton disregard of [its] maintenance and cure obligation . . . ."[50] The Policy in the present case, however, includes a punitive damages exclusion:

> Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy excludes liability for fines, penalties,

---

[47] *Id.*
[48] *Id.* at 16
[49] ECF No. 152-4 at ¶ 6.
[50] *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424 (2009).

>  ***punitive or exemplary damages***, including trouble damages or any other damages resulting from multiplication of compensatory damages.[51]

Punitive damages exclusions are enforceable under the Louisiana Direct Action Statute.[52] To the extent that Stewart is seeking punitive damages based on allegations that Moncla "willfully and wantonly" disregarded its maintenance and cure obligations, the punitive damage exclusion precludes a claim for punitive damages against the Underwriter Defendants.

Stewart, however, appears to suggest that the Underwriter Defendants' failure to pay maintenance and cure supports an independent claim for punitive damages against them.[53] The district court rejected the same argument in *Roberts v. Inland Salvage, Inc.*[54] The *Roberts* court held that the obligation to pay maintenance and cure—and punitive damages for the "willful and wanton" disregard of that obligation—is the responsibility of the Jones Act employer, not an insurance carrier sued under the Direct Action Statute.[55] The *Roberts* court thus rejected the argument that an employer's insurance carrier was independently liable for punitive damages for failing to pay maintenance and cure.[56] The *Roberts* court also rejected the availability of punitive damages based on an independent "bad faith" claim against the insurer, because the plaintiffs had not pleaded a bad faith claim.[57] The Court agrees with the reasoning of the *Robert's* decision. As in *Roberts*, Stewart has not pleaded any grounds for an independent punitive damages claim against the Underwriter Defendants as opposed to Moncla. The Court therefore GRANTS the

---

[51] ECF No. 150-8 at 15 (emphasis added).
[52] *See, e.g., Roberts v. Inland Salvage, Inc.*, No. 14-1929, 2017 WL 6540380 at *6 (E.D. La. Dec. 21, 2017); *Meredith v. Louisiana Federation of Teachers*, 209 F.3d 398, 407-8 (5th Cir. 2000).
[53] ECF No. 157.
[54] *Roberts*, 2017 WL 6540380 at *7.
[55] *Id.*
[56] *Id.*
[57] *Id.*

11

Underwriter Defendants' Motion for Partial Summary Judgment with respect to punitive damages, and Stewart's punitive damage claims against the Underwriter Defendants are dismissed.

## IV.
### CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion for Partial Summary Judgment as to a credit for the aggregate deductible [ECF No. 152] and the Motion for Partial Summary Judgment with respect to punitive damages [ECF No. 150] in their entirety. The Court DENIES the Motion for Partial Summary Judgment with respect to insurance coverage filed by Stewart [ECF No. 148].

THUS DONE in Chambers on this 14th day of February, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE